GERSHON J. COUNTRYMAN, Plaintiff, *v.* DONALD H. BREEN, Defendant.

CORA A. COUNTRYMAN, Plaintiff, *v.* DONALD H. BREEN, Defendant.

Supreme Court, Jefferson County, April 20, 1933.

*Cobb, Cosgrove, Harter & Wright,* for the plaintiffs, for the motion.

*Purcell, Cullen & Reynolds,* for the defendant, opposed.

SMITH, E. N., J. These are negligence actions; they were upon the January, 1932, Trial Term calendar for Jefferson county; they were reached for trial on the 21st of January, 1932, and after a jury was drawn the attorneys for the plaintiffs and for the defendant announced in open court that the cases had been settled. The defendant was insured. Releases were prepared and delivered to the insurer, and on the 15th of March, 1932, a check of the insurer was received by the attorneys for the plaintiffs in the sum of $3,500 for the settlement of both actions; the amount of the settlement in the action by Cora A. Countryman was $2,500, and in the action by Gershon J. Countryman it was $1,000; in the meantime and on the 6th day of March, 1932, Gershon J. Countryman died; there was some delay in getting an administrator appointed who might indorse the check, and such administrator was not appointed until March 21, 1932; the check was then promptly presented for payment and payment was refused on the ground that the insurer was insolvent and that its assets had been taken over by the Superintendent of Insurance of the State of New York for liquidation and that payment had been restrained by order of the Supreme Court dated March 22, 1932.

The action by Gershon J. Countryman was for damages to his automobile and for his expenses incurred by way of medical attendance necessitated by the injuries sustained by his wife. It is

unnecessary here to consider the question as to whether or not the action of Gershon J. Countryman abated; certainly it did not abate in respect to the damages to his car. If the motion for judgment be granted, it may be entered *nunc pro tunc* as of the date of the settlement. (*Long* v. *Stafford*, 103 N. Y. 274.)

At the time of the settlement and upon the stipulation in open court of the parties, had either party so moved, a directed verdict might have been taken and thereupon judgment entered. Such course of procedure has been followed in this district. Especially on account of the congestion of our calendars, reasonable settlements of lawsuits are favored by the courts. The course of procedure which was followed in this case has been common; hundreds of cases each year are disposed of in this way, cases are stricken from the calendar, and in rare instances do they become the subject of further consideration by the court. This speaks well for the integrity of counsel and is a course of procedure to be encouraged rather than discouraged. It has been held, in instances where settlements are actually agreed to, and announced by oral stipulation of counsel in open court, that in the event the settlement agreed to and openly stipulated be not consummated, upon motion of either party judgments accordingly will be ordered. (*Lee* v. *Rudd*, 120 Misc. 407.)

In 15 Ruling Case Law (at p. 644) it is said: " It is the constant practice of courts to make various orders finally disposing of actions upon the agreement of the counsel for the parties expressed orally in open court, and these orders have the same effect as if made upon the personal consent of the parties, and in the absence of fraud or mistake are conclusive. It is accordingly generally held that an attorney, employed as such to represent his client, may, as an incident of his implied authority over the conduct of the case, consent to the entry of a judgment or decree against his client. The reason for the rule lies in its convenience. By licensing attorneys, the courts recommend them to the public confidence; and if the opposite party, who has concerns with an attorney, in the business of a suit, must always, at his peril, look beyond the attorney to his authority, it would be productive of great public inconvenience." (See, also, *DeCharett* v. *St. Matthews Bank*, 214 Ky. 400; 50 A. L. R. 34.)

It has been held, however, that " Where an attorney makes a compromise unauthorized by his client, and consents to a judgment thereon, the judgment may be vacated upon the application of the aggrieved client, seasonably made." (*Dwight* v. *Haslett*, 66 A. L. R. 102.)

Upon the face of the papers, therefore, and the stipulated facts,

there is no reason why the motion for judgment should not be granted.

The defendant, however, makes affidavit that, pursuant to the requirements of the terms of his policy of insurance, he delivered the summons and complaint to a representative of his insurer, and that thereafter and on April twenty-fifth he was called to the offices of Messrs. Purcell, Cullen & Reynolds, where he conferred with Mr. Reynolds of that firm and was informed by Mr. Reynolds that the firm of Purcell, Cullen & Reynolds represented his insurer. He further states that on or about January 20, 1932, he conferred with Mr. Reynolds and the claim adjuster of his insurer at the offices of Purcell, Cullen & Reynolds, and that thereafter, as he is informed and believes, the surety company settled all claims arising out of the accident for $3,500; that he took no part in the negotiations looking to a settlement and had no part in the consummation of it; that he was not consulted in any way relative to said adjustment and at no time gave his approval of the same.

The defendant is supported in this affidavit by the affidavit of Mr. Reynolds, one of the attorneys of record, who states that the defendant took no part in the settlement and had no knowledge of the amount agreed to until some time after the announcement of the settlement.

The position of the defendant is that in reality, under the circumstances, Messrs. Purcell, Cullen & Reynolds were not his attorneys but were the attorneys of his insurance carrier. In this connection the following facts should be noted: The defendant swore to the answers in each of these actions on the 25th day of April, 1931, each of the answers being subscribed by Messrs. Purcell, Cullen & Reynolds. The cases were upon the calendar, Messrs. Purcell, Cullen & Reynolds being held out as attorneys for the defendant in each thereof. No evidence was before the court, nor could it well appear upon a trial, or in any other negligence case where there is an insurance carrier involved, that there was an insurance company involved in the actions. The insurance coverage was for an amount adequate to cover the settlement. Over a year has elapsed since the settlement, and nearly a year has elapsed since the insolvency of the insurance carrier, and yet no steps have been taken by the defendant to repudiate the settlement. There are no allegations of the unreasonableness of the settlement; there is no allegation of fraud: the only ground urged is that the attorneys, nominally his attorneys, were actually attorneys for his insurance carrier, and that he personally did not participate in the settlement or give his consent thereto.

If the defendant's position be sustained in this case it would

work a revolution in the practice that has obtained for many years in respect of settlements of causes of action in open court; the court would be forced to a position where in each case of settlement it would have to make inquiry as to the authority of counsel to make the settlement, as to whether there was an insurance carrier involved, and as to whether or not the defendant or his attorneys had any right, in view of their contractual relations with the insurer, to make the settlement. If there be any time when a court, for its own protection and in the public interest, should be authorized to rely upon statements of counsel, it should be when settlements are made in open court and in the orderly course of the administration of justice.

There is no question but what the defendant knew, immediately after the settlement, what the terms of the settlement were; he was in the court house at the time, ready for the trial of the actions; and yet he has taken no steps to repudiate the settlement. His duty then was instant, at that very term of court, at least to make repudiation of the act of his apparent counsel whom he had held out to the court as being his attorneys when he verified the answers in the cases. The extraordinary claim now made by his counsel on this motion, his record attorneys in the trial of these cases, calls for an inquiry into the reason why on this motion such an extraordinary position should be taken.

This reason is found in the terms of the policy of insurance itself, which were binding alike upon the defendant and upon the insurance carrier. By the express provisions of the policy of insurance the company agrees as follows: to pay, within the limits of the policy, " any loss by reason of the liability imposed by law upon the Assured for such bodily injuries or death so resulting." It also agrees to pay for property damage, and " To give prompt and *efficient service* (a) in investigating cases of bodily injuries or death or of damage to property of others * * *; (b) *in conducting negotiations for the settlement of any claims made on account of such bodily injuries or death, or of damage to property of others; and* (c) *in defending any suit brought to recover damages on account of such cases,* * * * unless or until *the Company may elect to effect settlement of such suit."* It also agrees " to pay in addition to damages, all expenses incurred by the Company for investigation, negotiation or defense; all costs taxed against the Assured in any such suit defended by the Company; all premium charges on attachment or appeal bonds required in all such suits; and all interest accruing on any judgment."

Under the heading " General Conditions," the policy provides (Subd. D):

" Upon the occurrence of an accident, *the Assured shall give prompt written notice thereof to the Company's Home Office at New York, New York, or to an Authorized Agent.* If any claim is made on account of such accident, the Assured shall give like notice thereof with full particulars. If thereafter, any suit or other proceeding is instituted against the Assured to enforce such claim, *the Assured shall immediately forward to the Company at its Home Office every summons or other process served upon him.* * * *

" E. The Assured shall not voluntarily assume any liability, nor incur any expense, other than for immediate surgical relief, nor settle any claim, except at the Assured's own cost. *The Assured shall not interfere in any negotiation for settlement, nor in any legal proceeding,* but whenever requested by the Company and at the Company's expense, the Assured shall aid in securing information and evidence and the attendance of witnesses, and shall cooperate with the Company (except in a pecuniary way) in all matters which the Company deems necessary in the defense of any suit or in the prosecution of any appeal."

By the clear terms of this policy the defendant had given power to the insurer to undertake the defense of these actions, which of course involved the employment of counsel; he actually delivered the pleadings and the process over to the insurance company with the knowledge and expectation that it would defend the actions and, to the amount of the coverage, protect him against loss. So that in fact as well as in name, by reason of his swearing to the answers, and by reason of the contract of insurance itself, Messrs. Purcell, Cullen & Reynolds were actually his attorneys, and the fact that the settlement was approved by the insurance company does not relieve him (he having authorized such a course by the very terms of the policy) from liability on account thereof. He was at liberty, at the risk of course of forfeiting his rights under the policy of insurance, to discharge his counsel. Any limitation of his freedom in this respect was of his own creation, and, in the absence of any allegation of fraud, misrepresentation or unethical dealing on the part of his counsel before the court, he should not now be heard to repudiate their settlement announced in open court.

To sustain the contention of the defendant would be to establish a doctrine in practice which would work grave injustices. This is illustrated by the fact that the main witness for the plaintiffs is now dead.

All of the defendant's burden at this time is occasioned by the insolvency of his insurer; this is something for which certainly the plaintiffs have no responsibility and on account of which they should not suffer.

If the plaintiffs had, at the time of the settlement, upon the stipulation of settlement in open court, moved for a directed verdict, the motion would have been granted and judgment would have been entered upon such a verdict, not against the insurance carrier, but against the defendant; execution would have been issued, not against the insurance carrier, but against the defendant, and only in case of his failure to pay would any right of action have accrued to the plaintiffs having the judgments against the insurance carrier. If such a course had been pursued the defendant would not have been heard to complain unless he took prompt action, based upon some allegation of fraud or unethical conduct, to set aside the verdict or to vacate the judgment entered thereon. The situation, so far as the parties plaintiff are concerned, is no different from what it was on the 21st day of January, 1932, when the stipulation of settlement was made in open court. Nothing appears upon the stipulated facts in this case to change the situation.

The motion of the plaintiff in each case is granted, without costs.